IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:12-CT-3233-FL

| | | |
|---|---|---|
| KARIM ABDUL AKBAR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| JOYCE KORNEGAY, MR. MOBELY, | ) | |
| JOHNNY HAWKINS, and P.E.R.T. | ) | |
| OFFICERS, | ) | |
| | ) | |
| Defendants. | ) | |

This matter comes before the court on the motion to dismiss (DE 22) pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by defendants Johnny Hawkins ("Hawkins"), Joyce Kornegay ("Kornegay"), Mr. Mobely ("Mobely"), and the unidentified P.E.R.T. team members. The issues raised were fully briefed, and are ripe for adjudication. For the following reasons, the court grants in part and denies in part defendants' motion to dismiss.

**STATEMENT OF THE CASE**

On November 29, 2012, plaintiff, a state inmate, filed this action pursuant to 42 U.S.C. § 1983 against defendants Kornegay, Mobely, Hawkins, and two unidentified members of the P.E.R.T. team. On June 5, 2013, the court allowed plaintiff to proceed with his action. As part of its order, the court noted that plaintiff must identify the unnamed P.E.R.T. team members by the close of discovery, and that failure to do so would result in the dismissal of the action against the unnamed defendants without prejudice.

Defendants subsequently filed a motion to dismiss, arguing that plaintiff failed to state a claim upon which relief may be granted.  Alternatively, defendants assert the affirmative defense of qualified immunity.

## STATEMENT OF THE FACTS

The facts as alleged by plaintiff in his complaint can be summarized as follows.  On July 3, 2012, between 11:00 a.m. and 12:00 p.m., two unidentified P.E.R.T. team members handcuffed plaintiff behind his back and escorted him out of cell block C at the Grandville housing unit into the hallway.  (Compl. p. 3.)  The P.E.R.T. team members then ordered plaintiff to put his nose on the bulletin board on the wall.  (Id.)  After plaintiff refused, he claims the two P.E.R.T. team members proceeded to assault him.  (Id.)  The officers "smacked and hit [plaintiff's] face and head, and [plaintiff's] face was mashed and pressed against the wall, and [he] was punched and hit in the stomach and back, and ribs, and back of [his] neck."  (Id. p. 4.)  Plaintiff, additionally, was "choked by a hand to [his] throat until [he] almost passed out."  (Id.)  The two P.E.R.T. team officers then placed plaintiff in a choke hold and took him to segregation.  (Id.)  When plaintiff arrived at the segregation cell, the two P.E.R.T. team members rammed his head into the sliding doors and the door frames.  (Id.)

Plaintiff was not "screened by medical before being placed into segregation cell."  (Id.)  Plaintiff also was "NEVER SEEN by medical for [his] injuries or to check [his] health before being placed in a segregation cell."  (Id.)  Plaintiff additionally states that the entire incident was captured on videotape.

On July 5, 2012, plaintiff submitted a grievance addressed to Kornegay.  "[Plaintiff] was told [Kornegay] wasn't at Warren corr. Inst. this day, so [plaintiff] asked the officer if Supt. Mobely was

[there] and [the officer] said yes, [plaintiff] asked [the officer] if she would take it to [Mobely] and [the officer] said she would and she did." (Id. p. 5.) Plaintiff stated in his grievance that his life was in danger and informed prison officials that he was not going back into general population until something was done about the two unidentified P.E.R.T. team officers. Prison officials did not respond to plaintiff's grievance.

Plaintiff subsequently refused "to go to population and received a disciplinary infraction" on July 8, 2012. (Id. and Attach. 3.) Plaintiff "was given I-Con and told to resubmit [his] grievance because nobody [knew] anything about it." (Id. p. 6.) Plaintiff re-submitted his grievance and it was rejected three days later because it "appeal[ed] disciplinary action." (Id.) Plaintiff removed the reference to his disciplinary action and re-filed the grievance, and the grievance was accepted on August 13, 2012. (Id.) The grievance was "NEVER ANSWERED, TRUTHFULLY." (Id.) Plaintiff states that he "never raised any issue about being on lock-up (I-Con). [His] complaint is two officers jumped on [him] and staff at Warren Correctional Institution has NOT DONE ANYTHING ABOUT IT. NOR HAS THERE BEEN AN INVESTIGATION INTO THIS MATTER." (Id.) Plaintiff states that he still feels that his life is in danger. (Id.) Plaintiff, ultimately, completed the administrative remedy for his excessive force grievance on October 30, 2012. (Id. Attach. 13.)

## DISCUSSION

A.    Motion to Dismiss

1.    Standard of Review

A motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."

Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A claim is stated if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). In other words, this plausibility standard requires a plaintiff to articulate facts, that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible he is entitled to relief. Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (citing Iqbal, 556 U.S. at 678, and Twombly, 550 U.S. at 557).

     2.    Analysis

         a.    Deliberate Indifference to Medical Needs

Defendants argue that plaintiff failed to state a claim pursuant to the Eighth Amendment to the United States Constitution arising out of deliberate indifference to plaintiff's serious medical needs. In response, plaintiff states that he "never stated he was denied medical treatment." (Pl.'s Resp. p. 3.) Because plaintiff did not assert an Eighth Amendment claim arising out of his medical care, the court DENIES as MOOT plaintiff's motion to dismiss this claim.[1]

_____

[1] Plaintiff states in his complaint that he was not medically screened subsequent to the alleged use of excessive force. The court assumes that plaintiff made this allegation in support of his excessive force claim.

4

b.      Excessive Force

Defendants assert the defense of qualified immunity. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."   Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In other words, a government official is entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct.  Pearson v. Callahan, 555 U.S. 223, 236 (2009).

The Eighth Amendment protects inmates from cruel and unusual punishment.  See Wilson v. Seiter, 501 U.S. 294, 298–99 (1991).  To succeed on an excessive force claim under the Eighth Amendment, a prisoner must establish that "the officials act[ed] with a sufficiently culpable state of mind" and that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation."   Hudson v. McMillian, 503 U.S. 1, 8 (1992) (alteration in original) (quotations omitted); see Wilkins v. Gaddy, 559 U.S. 34 (2010) (stating that there is no injury threshold for excessive force claims); Williams v. Calton, 551 F. App'x 50, 51 (4th Cir. 2013) (same).

In this case, plaintiff alleges that the two unidentified P.E.R.T. team members smacked, punched, and choked him while he was in restraints.  These allegations are sufficient to state an Eighth Amendment excessive force claim against the unidentified the two unidentified P.E.R.T. team members.  See McMillian v. Wake County Sheriff's Dept., 399 F. App'x 824, 828 (4th Cir. 2010) ("[W]e conclude the district court erred in finding there was no issue of material fact as to the need for the use of force and the extent of force Defendants used.  Crediting [the plaintiff's] version

5

of the events, we cannot say, as a matter of law, that knocking down, punching, and kicking an arrestee while he is in handcuffs are actions taken in good faith to restore order.") (citation omitted). Thus, the two unidentified P.E.R.T. team members' motion to dismiss this claim is DENIED.

c.     Defendants Kornegay, Mobely, and Hawkins

Plaintiff clarifies in his response to defendants' motion to dismiss that his claim against Kornegay, Mobely, and Hawkins, arises out of their participation in the North Carolina Department of Public Safety's inmate administrative remedy procedure. In particular, plaintiff contends that these defendants interfered with efforts to grieve his alleged excessive force claim.

A plaintiff does not have a constitutional right to have available or to participate in a grievance process. See Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994); Smith v. Ray, 36 F. App'x 99 (4th Cir. 2002) ("[A]ccess to the grievance procedure is not a constitutionally protected right[.]"); Oliver v. Myers, No. 7:08-CV-558, 2008 WL 5212409, at *4 (W.D. Va. Dec. 12, 2008) (stating that "because state grievance procedures are separate and distinct from state and federal legal procedures, an institution's failure to comply with state grievance procedures does not compromise its inmates' right of access to the courts"), appeal dismissed, 335 F. App'x 317 (4th Cir. 2009). Further, even if available, a prison grievance procedure does not confer any substantive right upon inmates. Adams, 40 F.3d at 75; Bradley v. Wheeler, No. 1:09cv371, 2009 WL 2634753, *4 (E.D. Va. Aug. 25, 2009). Finally, a ruling adverse to a plaintiff on an administrative complaint does not give rise to a constitutional claim. Brown v. Virginia Dept. of Corrections, No. 6:07-CV-33, 2009 WL 87459, at * 13 (W.D. Va. Jan. 9, 2009) (citing George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007) (adding that "[a] guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct

6

does not")). Thus, a prison official's alleged failure to comply with the grievance procedure is not actionable under § 1983, particularly where, as in this case, plaintiff ultimately successfully grieved the alleged excessive force claim. Id.

## CONCLUSION

Based upon the foregoing, defendants' motion to dismiss (DE 22) is GRANTED in part and DENIED in part. Defendants' motion is GRANTED as to plaintiff's claims against defendants Kornegay, Mobely, and Hawkins. Defendants' motion is DENIED as MOOT as to the deliberate indifference to medical needs claim. Defendants' motion is DENIED as to plaintiff's excessive force claim against the two unidentified P.E.R.T. team members. The Clerk of Court is DIRECTED to issue an initial order.

SO ORDERED, this the 28th day of July, 2014.

LOUISE W. FLANAGAN
United States District Judge

7